MADIGAN et al. v. KOUGAROK MINING CO. et al.

(Second Division. Nome. April 28, 1906.)

No. 1,232.

1. WATERS AND WATER COURSES (§ 24*)—INJUNCTION—MINES AND MINERALS.

Plaintiffs located two placer mines on Quartz creek through which the stream flowed in its natural channel. In 1900 and each year thereafter plaintiffs first appropriated and used all the waters of the creek in mining on the said claims. In 1903 the predecessors of the defendant company built a ditch, and they and defendant diverted a large portion of the waters of the creek

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

away from the plaintiffs' mines and used the same elsewhere. *Held*, plaintiffs are entitled to use all the waters of the creek as they have formerly done in their mining operations on said claims, and defendant company enjoined from diverting the same.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 24.*]

**2.** WATERS AND WATER COURSES (§ 18*)—MINES AND MINERALS—RIPARIAN RIGHTS.

Riparian rights attach to the ownership of a placer mining claim situated on a natural stream from the date of the location of the claim. See Thorndyke v. Perseverance Min. Co., 164 Fed. 657, 90 C. C. A. 473.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 10; Dec. Dig. § 18.*]

This is a suit in equity wherein the plaintiffs demand: Damages for the unlawful diversion of all the waters of Quartz creek, a tributary of the Kougarok river, in the Kougarok mining district, Alaska, from their natural channel of flow through and over mining claims Nos. 11 and 12 above Dahl's discovery on said creek; equitable relief (a) by an order of court decreeing that plaintiffs are entitled to have all of the waters of Quartz creek flow in their natural channel over and across said placer mining claims, and (b) an order enjoining and restraining the defendants, their agents, servants, employés, and lessees, from diverting the waters of said creek from their natural channel, and from depriving the plaintiffs of the use thereof in working and developing said claims.

Plaintiffs assert that they have been the owners of said mining claims ever since the month of July, 1900, and by virtue of valid and subsisting mineral locations covering said claims have also been in the actual possession of said claim; that the natural channel of said creek lies within the boundaries of said claims, and through it during the mining season of each year a large quantity of water flows; that in the month of July, 1900, plaintiffs, through their grantors and predeces-

sors in interest, appropriated and diverted and used all of the waters of said creek for mining purposes, and ever since have continued to divert and use all of said waters in the development and working of said placer claims, except when deprived of the use of said waters by the defendants; that said claims are valuable for the gold contained therein, and that to operate said claims and extract the gold therefrom it is necessary that plaintiffs have the continuous, free, and uninterrupted use of all of the water in said creek as it naturally flows over and across said claims without obstruction or hindrance. They further charge that during the months of July, August, and September in the years 1903 and 1904 the defendants wrongfully diverted all of said waters from the natural channel of said stream, thereby preventing the plaintiffs from developing and operating said claims and extracting the gold therefrom, to their damage in the sum of $25,000. They also allege that the defendants threaten to continue the injuries above recited, and, unless the defendants be restrained therefrom by an injunction from this court, great and irreparable damage will be done to the plaintiffs, and that they will have no plain, speedy, or adequate remedy at law for the injuries complained of.

All these allegations are denied by the defendants. The Kougarok Mining Company raises the special defense that in the spring of 1903, after it had obtained the consent of the majority of the owners of said claims Nos. 11 and 12, it constructed a ditch with the intent and purpose of diverting from said stream the flood waters thereof for use upon placer mining claims, and ever since has diverted the flood waters and only the flood waters of said stream upon placer mining claims of said company, but has used the same without injury or damage to the said plaintiffs; that the diversion of said flood waters was, on the contrary, a benefit to said two claims de-

scribed in the plaintiffs' complaint, in that the diversion of said water has saved the plaintiffs the expense of diverting the flood waters from the workings on their claim. It is denied that the claims are valuable, and it is alleged that at no times during the year 1900 and the years since 1900 have said claims been operated at a profit, and, further, that under any system of mining now known it is impossible to operate said claims at a profit. It further alleges that it has heretofore, during the years 1903 and 1904, furnished the said plaintiffs, by agreement with them, all of the water necessary for their use, or which they could reasonably use, in mining said claims; that the cost of said ditch was $3,500, and but for the consent and license of a majority of said owners of said two claims they would not have constructed said ditch, and that the quantity of water furnished the plaintiffs was a sluice head under pressure.

Three of the defendants, namely, Jerry Galvin, N. P. Olson, and H. P. Hawkinson, set up as their defense that they never diverted in their own proper persons any of the waters of said creek from said two claims, and that if any injury was caused to the plaintiffs it was though the acts of said Kougarok Mining Company. Griff Yarnell, the only other defendant, as his defense denied that he at any time diverted the waters of said Quartz creek, or that he had any interest in any ditch built for the purpose of diverting said waters, and avers that he never used any of the waters conducted therein, except as water was discharged upon his claim after it had been used by the Kougarok Mining Company.

By way of reply the plaintiffs deny all the allegations of the Kougarok Mining Company set out in its separate further and affirmative defense.

John L. McGinn and Jos. K. Wood, for plaintiffs.
M. J. Cochran, for defendants.

MOORE, District Judge. It is fully established by the evidence that the plaintiffs have been in possession of the mining claims described in their complaint, namely, placer claims Nos. 11 and 12 on Quartz creek, by virtue of valid original locations thereof, and that their rights to said claims still continued and subsisted at the date of the trial. It was not disputed at the trial that the natural channel of said Quartz creek lies within the exterior boundaries of the said claims, and that during the mining season of each and every year, beginning with 1900 and ending with 1904, the waters of Quartz creek have flowed over said claims through the natural channel of said stream. It further appears from the evidence that all the waters of said stream in the month of July, 1900, while they were flowing in the natural channel of said stream over said mining claims, were first diverted and appropriated by the grantors and predecessors in interest of the plaintiffs, by means of dams, ditches, and flumes, and were used for mining purposes on said claims in the working and development thereof, and ever since said month of July, 1900, to the time of bringing the action, the plaintiffs, by themselves, grantors, and predecessors in interest, have continued to so use the waters thus diverted, except when the defendants prevented their use of the waters in the manner aforesaid.

Such rights as the defendant Kougarok Mining Company may have in the water of Quartz creek were initiated by Jerry Galvin by an appropriation of the waters of said stream made April 28, 1903, followed by a written notice thereof put on record in the office of the commissioner of the Kougarok mining and recording district, Alaska, on the 1st day of May, 1903. When the defendant company began to excavate and build its ditch, the rights of the plaintiffs in said mining claims and in the water of said creek flowing through said claims were already vested in them.

The evidence before the court is to the effect that the plain-

tiffs at all times, except, perhaps, when the waters of Quartz creek are at their flood, need all the water of the stream for ground sluicing and for carrying on their other mining operations. The contention of the defendants that no water was ever diverted by them without the consent of the owners of the mining property is not supported by the evidence. Indeed, there is no evidence that the two plaintiffs ever gave their consent to the defendants' diverting the waters from the stream. If others professing to be the owners of the claims, or even actual co-owners of the claims with the plaintiffs, consented to the diversion, the plaintiffs would not in any view be stopped from complaining thereof in this action.

The defendants were equally unsuccessful in their attempt to prove that at no time have the claims been operated at a profit. Their right to the use of the water would not be impaired in the least by their inability to work the claims at a profit. They had a clear right to use the water in an effort to prospect or develop their claims. It is not necessary for the plaintiffs to show that their mines would pay to work in order to entitle them to protection in the use of the water which is incident to their claims. They have a right to try to make such mines pay. The defendants have likewise failed to establish that part of their defense setting forth that the plaintiffs have received from the defendants as much water as they need to work their claims in 1903 and 1904. The evidence is plainly to the contrary of this proposition.

In my opinion all the main allegations of the complaint are established by the preponderance of the testimony, and the affirmative allegations of the defenses disproved. What, then, are the rights under the law?

By Act Cong. June 6, 1900, § 26, tit. 1 (31 Stat. 321, c. 786), entitled "An act making further provision for a civil government for Alaska, and for other purposes," the laws of the United States relating to mining claims, mineral locations,

and rights incident thereto were extended to the territory of Alaska. Carter's Code, p. 139. This was a re-enactment of a provision of the act of Congress of May 17, 1884 (section 8), whereby the laws of the United States "relating to mining' claims and the rights incident thereto" were declared to be "in full force and effect in said district from the passage of said act." By section 7 of the last-named act the general laws of the state of Oregon then in force were extended so far as they were applicable and not in conflict with the laws of the United States. 23 Stat. 25.

Riparian rights as defined in the common law were then in force in the state of Oregon. Shook v. Colohan, 12 Or. 239, 6 Pac. 503. So far as I have information they were still in force in that state in the year 1900. When all the acts essential to a valid location of the claim described in the complaint had been completed, the locator and those in privity of interest with him acquired the right to use so much of the water of Quartz creek as was reasonably necessary for prospecting, mining, and operating the claims. "A placer location ex vi termini imports an appropriation of all waters covered by it in so far as such waters are necessary for working the claim." Schwab v. Beam (C. C.) 86 Fed. 42. By the common law the riparian owner has the right to have the water flow as it was wont to flow, undiminished except by the reasonable use and consumption thereof by the upper proprietors. Sturr v. Beck, 133 U. S. 551, 10 Sup. Ct. 350, 33 L. Ed. 761.

It is a familiar rule of the common law that no one can divert the water from the premises of the riparian owner without his consent, but must let the water flow in its natural channel across the lands of the riparian owner. The right of the riparian proprietor to the flow of the stream is inseparably annexed to the soil, and passes with it, not as an easement or appurtenance, but as part and parcel of it. Use does not create the right, and disuse cannot destroy or suspend it.

The right in each extends to the natural and usual flow of all the water, unless where the quantity has been diminished as a consequence of the reasonable application of it by other riparian owners for their lawful purpose. Lux v. Haggin, 69 Cal. 255, 4 Pac. 919, 10 Pac. 753; Pomeroy on Water Rights, § —.

Riparian rights attach to the ownership of a placer mining claim situated on a natural stream from the date of the location of the claim. Sturr v. Beck, 133 U. S. 544, 10 Sup. Ct. 350, 33 L. Ed. 761; Schwab v. Beam (C. C.) 86 Fed. 41; Cruse v. McCauley (C. C.) 96 Fed. 369; Stark v. Starr, 6 Wall. 402, 18 L. Ed. 925. These are all the rights of a riparian owner now calling for mention.

It was virtually conceded that such rights in the water of Quartz creek as the defendants may have gained were first acquired by their predecessor in title after the location of the two mining claims. The precise date from which they trace claim of right to the use of the waters of said creek is April 28, 1903. At that time the mining claims had been segregated from the public domain, and the land, with the riparian rights in the waters of Quartz creek annexed thereto, had become vested in the plaintiffs. The rights of the defendants to the use of the water of the stream is therefore to be enjoyed, if at all, in subordination to the rights of the plaintiffs to the flow and use of the stream. In other words, the defendants may not use the waters of the stream until the plaintiffs have had the first use of them to the extent of the full natural flow of them, if they shall reasonably need the same for a beneficial use. The evidence does not make clear the number of miners' inches of water which the plaintiffs may take from the stream under their location or subsequent actual appropriation. There is furnished to the court no data by which the court could apportion to each of the parties plaintiff and defendant a several share of the water. The opinion

of the court is, therefore, that the plaintiffs should have a decree that they are entitled to have all the waters of Quartz creek flow in the natural channel thereof over and across and through the said placer mining claims, but that if at any time hereafter the said plaintiffs should not apply to their reasonable and beneficial uses all of the waters of said creek, the surplus above the amount used by them may be diverted into the ditch of said defendants, to be used by them in prospecting, developing, and operating the mining claims of said defendants and others along the line of their ditch. This right of diversion is, of course, modified and limited by the prior and paramount rights of other riparian owners or locators of land through or along which said stream flows. But I shall make no order in reference to other riparian owners; they not being before the court in this action.

The evidence shows that the defendants have committed a trespass upon the property of the plaintiffs, but does not ascertain the precise amount of damages which have resulted from the trespass. It does establish that the plaintiffs' riparian rights have been violated. This cannot be done without liability to repair the injury. The law presumes damage as the facts appear in this case, and nominal damages to the amount of $1 will therefore be awarded to the plaintiffs as part of the court's judgment.

A writ of injunction may issue, after findings of fact and conclusions of law in accordance with this opinion have been submitted to and adopted by the court.