THORNDYKE et al. v. ALASKA PERSEVERANCE MINING CO.†

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,540.

1. APPEAL AND ERROR (§ 1009*)—REVIEW—FINDINGS IN EQUITY CASE.

The findings of the court in a suit in equity must be taken as presumptively correct, and, unless an obvious error has intervened in the application of the law or some serious or important mistake has been made in the consideration of the evidence, such finding will not be disturbed by the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970–3978; Dec. Dig. § 1009.*]

2. WATERS AND WATER COURSES (§ 151*)—APPROPRIATION OF WATER FROM STREAM—ABANDONMENT.

Where an appropriator of water from a stream for use in developing mining claims owned by him at once commenced work necessary to take out and utilize the same, which he continued for four years and until he sold his property and rights to defendant, and during the next four years defendant continued the work in good faith, expending upward of $500,000 in developing the mines, which were worked together as one property, building a stamp mill and boarding house and completing works by which the water was utilized to run the mill and supply the boarding house, there was not at any time such an abandonment of the water right as would authorize an adverse appropriation of the water by another at the end of that time, under the rules of the mining district which required a diligent and continuous prosecution of the work to completion.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 155; Dec. Dig. § 151.*

Abandonment of water rights, see note to North American Exportation Co. v. Adams, 45 C. C. A. 190.]

Appeal from the District Court of the United States for Division No. 1 of the Territory of Alaska.

This suit was commenced to obtain a decree establishing the alleged right of the plaintiffs, by prior appropriation and use, to 1,000 miner's inches of the waters of a certain creek called "Lurvey Creek," and to enjoin the defendant from diverting any portion of the said 1,000 miner's inches, and for the recovery of $5,000 as damages, and costs of suit; the plaintiffs basing their alleged right upon the alleged appropriation by the then plaintiff, V. McFarland, of the said 1,000 miner's inches of the waters of Lurvey creek pursuant to a notice in the complaint and herein set out, alleged to have been posted on the 24th day of July, 1905, by McFarland at a point about 700 feet from the junction of Lurvey creek with another creek, called "Gold Creek." The complaint also alleges that on the 19th day of June, 1905, McFarland, then being a citizen of the United States over the age of 21 years, located a certain specifically described placer mining claim called the "B. C. Fractional Placer Claim," in Silver Bow Basin, Harris mining district, near the town of Juneau, Alaska, and on the 27th day of the same month filed it for record with the recorder of the mining district, at the time of the location of which claim Lurvey creek flowed through it, carrying a volume of water, then unappropriated, varying from 600 to 1,000 miner's inches. The said notice is as follows:

"Notice of Appropriation of Waters.

"Notice is hereby given that the undersigned on July 24th, 1905, locates, appropriates, and claims 1,000 miner's inches of water of the waters of Lurvey Creek, in the Silver Bow Basin, in Harris Mining District, District of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Rehearing denied November 6, 1908.

164 F.—42

Alaska, at the point where this notice is placed, which water is intended for use in mining and milling, and especially for use on the 'B. C. Fractional Placer' through which Lurvey Creek runs, at said point of diversion aforesaid. The said water is to be diverted and conveyed by means of a dam and flume or pipe-line, measured from the junction of Lurvey Creek with Gold Creek to the point of diversion whereon this notice has been posted as aforesaid, about seven hundred (700) feet up said creek in a southeasterly direction.                                [Signed]    Appropriator and Locator,
"Witnesses:                                                "V. McFarland.
    "Frank S. Shelton.
    "James W. Kelly."

The complaint alleges that the said notice of appropriation was on the 26th of August, 1905, duly filed for record with the recorder of the said mining district, and that on that date "the said V. McFarland did commence the construction of a dam in the bed of the said Lurvey creek at the point of location and appropriation aforesaid, and did thereafter, immediately and continuously, construct from said dam an intake and flume, and carry the said waters over and upon the 'B. C. Fractional Claim,' and thereon construct flumes and sluices for the retention and collection of gold mined upon said placer, and erect upon said placer a hydraulic giant and pipe, and with said waters begin the washing and mining of the said placer claim with the said waters. And the said waters were so appropriated for the purpose of said mining, hydraulicking, and washing the gold in said placer claim, and was necessary for its full volume and amount for that purpose, and ever has been so necessary, and is now so necessary. And that thereafter these plaintiffs, by mesne conveyances, became and now are co-owners with the said V. McFarland in the said water right location and appropriation." The complaint then alleges that after such location, appropriation, and diversion of the said waters, and while the plaintiffs were actually engaged in the use of the same for the mining and washing of the said placer ground, the defendant, without right, diverted the waters of the creek at a point above that of the plaintiffs' diversion, and carried them away from their natural channel by means of flumes, ditches, and pipe lines, to the plaintiffs' damage in the sum of $5,000.

By its amended and supplemental answer, the defendant put in issue all of the material averments of the complaint, and as an affirmative defense set up that on and prior to the 2d day of July, 1897, one Joseph T. Gilbert was a citizen of the United States over the age of 21 years, and was the owner by location and purchase of six certain mining claims in Silver Bow Basin, near Juneau, Alaska, bordering upon and adjacent to a certain creek, and its tributaries, known as Lurvey creek, being the same Lurvey creek referred to in the complaint, which claims contained gold in paying quantities; that on the day last mentioned Gilbert went upon the public domain through which the creek flowed, at a point six or seven hundred feet below what is known as the "Lurvey Placer Claim," and then and there posted a notice of claim and appropriation of 4,000 miner's inches of the waters of the said creek, which waters were then unappropriated and unused, together with a right of way for a ditch, flume, and pipe line; that notice being as follows:

"Notice of Location Pre-empting of Right of Way for Ditch, Flume and Pipe Line and Location of Water.

"To whom these presents may concern, know ye, that I, Joseph T. Gilbert of Milwaukee, Wisconsin, a citizen of the United States, do hereby declare, and publish as a legal notice to all the world that I claim and have a valid right to the occupation, possession and enjoyment of all and singular that tract or parcel of land, lying and being in the Harris Mining District, District of Alaska, for the exclusive right of way for the purpose of constructing a ditch, flume, or pipe-line from Lurvey Creek to the Perseverance Mill site, U. S. Survey No. 68B, more particularly described as follows, to wit:
    "Commencing at this notice a monument the same being erected at a dam in said creek and running thence:
    "First course, N. 20 deg. 00' 151 feet, thence

"Second course, N. 47 deg. 30' W. 44 feet, thence
"Third course, N. 81 deg. 00' W. 126 ft., thence
"Fourth course, S. 20 deg. 15' W. 103 ft., thence
"Fifth course, S. 69 deg. 30' W. 75 ft.,
to the head of the pipe-line, thence by pipe N. 3 deg. 30' W. 1400 ft. horizontal measurement to the said mill site. I also claim and have valid right to 4000 miner's inches of water from said creek for mining purposes to be conveyed through said ditch and pipe to said mill site.

"Notice posted on the ground this 2d day of July, 1897.

"Joseph T. Gilbert,
"By Chas. W. Garside,
"Agent."

The answer alleges the recording of that notice on the 6th day of July, 1897, in Book 5 of Placers, in the recorder's office at Juneau, and that the said appropriation of the said water was made by Gilbert for the purpose of using the same in developing and working the said mining claims referred to in the answer, and that the whole amount of water so appropriated was necessary for that purpose; that the said mining claims constitute, with the mill sites in connection therewith, one entire mining property, and that the plan of development thereof then laid out contemplated the use of the said waters for the generation of power as well as all other mining purposes, and that the same was to be conveyed by ditch, flume, and pipe line to the mill to be erected as soon as the development of the mine should render the same expedient, and to the mine itself, boarding house, and wherever else the water should be needed, and that to that end Gilbert commenced, immediately after the posting and recording of the said notice, the construction of a dam in the bed of the creek at the point of appropriation mentioned, and immediately commenced the clearing of the right of way for the said ditch, flume, or pipe line referred to in the notice, and thereafter and continuously and with diligence proceeded with the construction of the said dam, intake, flume, ditch, and pipe line to carry said water to the said mill site, along the line described in the notice, a plat of which is attached to the answer. The answer alleges that Gilbert thereafter sold and conveyed, by good and sufficient deeds, all of his right, title, and interest in and to his said mining claims, mill sites, and water so appropriated and located by him, together with the right of way for the ditch, flume, and pipe line, and all of his improvements upon the said mining claims and mill sites, to the defendant, which deeds bear date April 22, 1902, and September 17, 1903, respectively, but that the defendant company went into the possession of all of the said property under an option to purchase prior to the execution of the deeds, to wit, about the 10th day of August, 1901, up to which date Gilbert continuously and with diligence prosecuted work upon his said mining claims and water rights, pipe and flume lines, and continued the development of his said mines, and that the defendant, after taking possession of the said property in 1901, and ever since that time, has continuously and with diligence continued to develop the said mining property so purchased from Gilbert, and other mining property which the company has since acquired adjacent thereto, and has continuously prosecuted its said work on said right of way for ditch, flume, and pipe line, from the point of the said intake on said Lurvey creek to the said mill site known as the "Perseverance Mill-site, U. S. Survey No. 68B," and has constructed and maintained continuously ditch, pipe, and flume lines conveying the said water from the dam and point of intake on Lurvey creek, and used the said water in connection with its boarding house, and air blast used in connection with running a large tunnel over 2,500 feet in length on its said property; and has continued its said improvements on the said property and mill site; has built a large boarding house for the purpose of accommodating its employés, exceeding 150 men; has constructed two large compressors, office buildings, stables, and outhouses, and completed a 50-stamp mill, the building being large enough for 50 stamps more, and ready to be equipped therewith, and has expended in all upon the said water rights, ditches, flumes and pipe lines, buildings and mill, over $250,000, and has expended in development work on the said mining property so purchased from said Gilbert, and other mining claims adjacent thereto, but all of which is one common

property, over $200,000 more, and that prior to July 24, 1905, the defendant had excavated a ditch line for the purpose of laying its water pipe to conduct the said water from said Lurvey creek to its said mill site, and had ordered and purchased pipe for the purpose of conveying the said water from the said creek to its said mill, which at said time was in the process of construction, and has continued the prosecution of its said work and completed the construction of its said flume and pipe line from said intake on said creek to said mill, and had, prior to said 24th day of July, 1905, diverted and appropriated the said water from said creek, and at all times had been in possession of the same and of the right of way so purchased from said Gilbert, and has used the said 4,000 miner's inches of water for hydraulic purposes and mining, and has turned it through the said flume and pipe and conveyed it to the said mill, and is ready to use the same for the purpose of generating power for the running and operation of the said mill and other purposes connected with its enterprise; that the defendant and its grantors have at all times since July, 1897, continuously maintained and used, and are entitled to maintain and use, the whole of the said 4,000 miner's inches of the water of the said Lurvey creek, and that the same will continue to be necessary to carry on, maintain, and operate the defendant's said mining and milling business, which operations cannot be carried on without the whole of the said water.

Replying to the affirmative answer and defense of the defendant, the plaintiffs allege that if it be true that on the 2d of July, 1897, or at any other time, Gilbert posted any notice of the intended diversion or appropriation of any of the waters of Lurvey creek, he and his successors in interest wholly failed to divert or to put to any beneficial use any of the said waters, and abandoned all right by virtue of such notice of appropriation or otherwise; that on the said 2d day of July, 1897, and ever since the year 1882, there was, and has been, in Alaska a mining district known as "Harris Mining District," within which the premises and rights in controversy here have been at all times embraced, in which mining district there has at all times been a recorder for the recording of mining claims and water-right notices and locations; that at a meeting of the miners of the district held in the year 1880 there was adopted and put into effect a code of local laws and rules governing the district and all persons therein, which rules were filed with the recorder for record, and were of record and in effect on July 2, 1897, by which local rules it was, among other things, provided:

"The right to use the running water flowing in a river or stream or down a cañon or ravine, may be acquired by appropriation. The appropriation must be for some useful and beneficial purpose, and when the appropriator or his successor in interest ceases to use it for said purpose the right ceases.

"As between appropriators, the one first in time is the one first in right.

"A person desiring to appropriate water must post a notice in writing in a conspicuous place at the point of intended diversion, stating therein:

"First: He claims the water there flowing to the extent of (giving the number) inches, measured under a four-inch pressure:

"Second: The purpose for which he claims it and the place of intended use. A copy of the notice must within (10) days after it is posted be recorded in the books kept by the recorder of the district.

"Within twenty days during the working season after the notice is posted the claimant must commence the excavation or construction of the works in which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion unless temporarily interrupted by rain or snow.

"By completion is meant the conducting of the water to the place of intended use.

"By a compliance with the rules above-named the claimant's right to the use of the water relates back to the time that the notice was posted.

"A failure to comply with such rules deprives the claimant to the right to the use of the water as against a subsequent claimant who complies therewith."

The reply of the plaintiffs further alleges that Gilbert and his successors in interest wholly failed to comply with any of the requirements of the said

local rules, by reason of which he and they abandoned and lost any right to said waters that they may have had.

In respect to the local rules and regulations set out in the plaintiff's reply, the court below found that they "fell into utter disuse before the rights of either of the parties to this action were claimed to have been initiated, and that the same are inconsistent with the general laws of the United States, and are therefore of no effect in the determination of the issue in this case"; and, further, "that prior to the year 1884 the miners of Harris mining district adopted rules governing the appropriation of water on public lands for mining purposes, and ever since that act the miners through the various camps in Alaska, and particularly Harris mining district, have conformed to the custom of posting notices and declarations of water rights, and the recording of the same, and the water from public streams has been diverted and used for mining and other beneficial uses, and such was the custom at the time of the initiation of defendant's rights herein and the commencement of this action, and down to the present time," which said subsequent local rules are set out in the findings as follows:

"Article 1. The right to use the running water flowing in a river or stream, or down a canyon or ravine, may be acquired by appropriation.

"Art. 2. The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such purposes, the right ceases.

"Art. 3. The person entitled to the use may change the place of diversion if others are not injured by such change, and may extend the ditch, flume, pipe or aqueduct by which the diversion is made to take place beyond that where the first use was made.

"Art. 4. A water appropriation may be turned into the channel of another stream and mingle with its waters and then reclaimed, but in reclaiming it the water already appropriated by another must not be diminished.

"Art. 5. As between appropriators, the one first in time is the first in right.

"Art. 6. A person desiring to appropriate water must post a notice in writing in a conspicuous place at the point of intended diversion, stating herein: First, he claims the water there flowing to the extent of (giving number) inches, measured under six-inch pressure; second, the purpose for which he claims it and the place of intended use. A copy of the notice must within (10) days after it is posted be recorded in the books kept by the recorder of the district.

"Art. 7. Within twenty days, during the working season or construction of the works in which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted by rain or snow.

"Art. 8. By completion is meant conducting the waters to the place of intended use.

"Art. 9. By a compliance with the above rules, the claimant's rights to the use of the water relates back to the time the notice was posted.

"Art. 10. A failure to comply with such rules deprives the claimant of the right to the use of the water as against a subsequent claimant who complies therein."

There was a large amount of evidence introduced on behalf of the respective parties upon the trial, upon which the court below made specific findings of fact, and much of which was specifically considered by the court in an elaborate opinion, also found in the record.

G. C. Israel, J. A. Hellenthal, L. R. Gillette, Lorenzo S. B. Sawyer, R. F. Laffoon, and Winn & Burton, for appellants.

Malony & Cobb, W. C. Sharpstein, and Frank M. Stone, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above).   From the pleadings of the parties we think it clear that no question of riparian

rights arises in the case, all of them basing their alleged rights on their alleged respective appropriations of the public waters for mining, and other purposes connected therewith.

The exhibits and other evidence in the case show that Silver Bow Basin is a small pocket surrounded by high mountains, upon some of which are located the defendant's lode mining claims—its mill, mill sites, buildings, and other improvements of that character being situated in the basin. Above the basin Lurvey creek forks, what is known as North or East Lurvey creek coming into the main stream at a point on what is now the defendant's Solo lode claim. It appears that in this basin placer ground was worked by miners many years before the rights of either party to this controversy were initiated, and that in their operations those former miners used the water of both branches of Lurvey creek, bringing that from the North or East creek to the main stream by means of a ditch or flume.

The trial court found, among other things, that on and prior to July 2, 1897, Joseph T. Gilbert was the owner, by location and purchase, of a group of seven lode mining claims, called respectively the "Perseverance," "Alta," "Jumbo," "Rimrock," "Perseverance No. 2," "Alta No. 2," and "Jumbo No. 2," and a group of four mill sites, namely, the Ajax, Rimrock, Alta, and Perseverance, all situated in Silver Bow Basin; that the lode claims lie high upon the mountains, and the mill sites in the valley below; that Lurvey creek flows over and across that group of claims, and tumbles down the mountain and unites with Gold creek within the boundaries of the Ajax mill site; that the ground over which Lurvey creek flowed on its course from the lode claims mentioned to the said mill sites was, on the 2d day of July, 1897, unappropriated and unoccupied; that on said 2d day of July, 1897, the said Gilbert, at a point on Lurvey creek where was the dam of the old miners, and at an altitude of about 800 feet above the mill site, located what is called in the record the defendant's Lurvey creek water right, claiming 4,000 miner's inches of the water of the said creek, and located and surveyed the right of way for a ditch, flume, and pipe line from the said old dam, across unappropriated government land, to said mill sites below, and posted his location notice at the dam, on land at the time unappropriated and unpossessed by any one, and on the 6th day of July, 1897, recorded the said location notice with the recorder of the district; that at the time of the posting of that notice and of its recordation the waters of Lurvey creek were unappropriated, and were so appropriated by Gilbert for use in the development and operation of his said mining properties, to be conveyed to the mines and mill sites by ditch, flume, and pipe, for power and other purposes; that immediately thereafter Gilbert commenced the development of his said mining claims by driving tunnels and crosscuts at what is now called the "Gilbert Tunnel and upper workings," and at the same time commenced the reconstruction of the old dam and the old ditch referred to as having been used by the former miners, and continued such development during the working season of each year thereafter until the close of 1899, when he completed the ditch to the penstock above the said mill site, and excavated for the pipe line from the penstock to the said mill site, and

as early as October, 1897, had the water flowing in the said ditch and turned out at the old spillway and over the "Little Falls" which are about midway between the mill sites and the intake on Lurvey creek; that Gilbert appropriated the said water in good faith and for the purpose of applying the same for the beneficial uses stated, and continued actual work on his said mines and water rights and locations, and prosecuted the same with diligence to the year 1901, at which time he sold his said mines, mill sites, water, water rights, and all improvements made thereon to one W. J. Southerland under a contract or option to purchase, who thereafter sold and assigned the option and contract to purchase to the defendant company, which company entered into possession of the whole of the said properties, water rights, and improvements in August, 1901, and thereafter complied with all the terms and conditions of the contract of purchase, and received from Gilbert a good and sufficient conveyance of all of the said mining properties, water, water rights, and improvements, since which time the defendant has been the owner thereof; that upon the defendant's acquiring the properties in August, 1901, it commenced to repair the ditch and dam, and laid out and commenced the driving of a tunnel in and through the said mining properties known as the "Alexander Tunnel," having its entrance about 275 feet above the said mill site, and extended the tunnel about 2,550 feet into the mountain, cutting the ore bodies at a depth of about 1,000 feet below the Gilbert tunnel, and far below the apex of the ore bodies; that in 1902, and while the defendant was driving the Alexander tunnel, the water from Lurvey creek was carried through the said ditch, spilled over the spillway into a canyon below the aforesaid "Little Falls," where it was caught and conveyed by pipe to the blacksmith shop of the defendant company and used therein, and in 1903, during the development of the said mining claims and water rights, the said water was extended to and used in the boarding house of the defendant company, and down an air shaft of the Alexander tunnel for the purpose of ventilation; that in the latter part of April, and in the early part of May, 1905, the defendant commenced the excavating for the foundation of a large boarding house, crusher house, compressor house, and for a 100-stamp mill, the ground being laid out for a 300-stamp mill, and also of a trench for the pipe line from the mill to the penstock at the old ditch, and continued such work with reasonable diligence, and on August 1, 1905, a new boarding house was completed and in use by the defendant, with the said water from Lurvey creek therein for domestic and fire purposes, and a foundation for the crusher house, and the trench for the pipe line were completed, and the material on the ground for the construction of the crusher house and the new flume from the dam from the penstock sluice, and much of the material for the construction of the mill; that by the latter part of October, 1905, the pipe line had been laid from the mill to the south corner of what is known as the "Perseverance Placer Claim," a new flume completed from both the main and east branches of Lurvey creek to the penstock at the head of the pipe line, and the said water turned into it and discharged at the spillway and passed down into the ravine, as it had done theretofore, and from the old ditch, where

it was gathered up for said uses; that in April and May, 1906, the pipe line was completed to the penstock, and the said water turned into it, and used at the mill and for hydraulic purposes, and during that year a mill was completed of sufficient size and dimensions to accommodate 100 stamps, and to this extent the scheme and plan of development laid out and started by the said Gilbert in 1897 was completed; that during the period of time mentioned government patents were issued to all of the aforesaid mining property, together with certain other properties located by the defendant, to wit, Perseverance No. 5, Perseverance No. 6, and Ethel fraction lode claims, and the Perseverance placer, all contiguous to the before-mentioned properties deeded to the defendant by Gilbert; that during the same period of time the defendant company completed an upraise from a point near the end of the Alexander tunnel a vertical distance of 920 feet, and ran many drifts and levels and completed other underground works, all for the successful mining and operation of the said property, at a cost in excess of $500,000; that on or about June 19, 1905, and while the defendant company was so actively engaged in its development work, the plaintiff V. McFarland located the B. C. fraction placer claim alongside the Perseverance placer, a small part of which B. C. fraction placer was unoccupied ground, and over which Lurvey creek flows for about 200 feet before entering the said Perseverance placer grounds; that all of the water so located and claimed by the defendant company and not used by it during the said period of development continued to flow down Lurvey creek and across said B. C. fraction claim located by the said McFarland, and that under his claim of 1,000 miner's inches of the waters of the said Lurvey creek he did on the 26th day of August, 1905, commence the construction of a dam and intake and flume, by means of which he proceeded to do some ground sluicing on ground embraced within a prior placer location claimed by the defendant company, called the "Martin Lode Claim," over which the B. C. fraction lapped, but that no clean-up was made and no gold was obtained therefrom of any consequence; that there is only from one-eighth to one-half of an acre of the B. C. fraction claim that is not in dispute, and that could be successfully worked or sluiced by the water taken from Lurvey creek at the plaintiffs' intake; that the location and attempted appropriation of the said water by the plaintiffs was not in good faith or for any beneficial purpose, and was not intended to be used by them for any such purpose.

Should it be conceded that Gilbert did not follow up his appropriation by work with sufficient diligence to have enabled him to hold the water as against any adverse appropriation made prior to his sale to the defendant, it would not help the plaintiffs, since the appropriation under which they claim was not made until July 24, 1905—several years after the defendant company acquired all of the properties from Gilbert. Certainly the evidence affords no just ground for saying that from the time of the defendant's purchase in 1903 it did not prosecute the work diligently. It shows that the defendant got many of its claims, and one or more of its mill sites, patented by the government, and that from the very inception of the undertaking the plan was to develop and operate all of them as one property; that it

drove one tunnel 2,550 feet into the mountain to cut its various ledges, made one upraise of 920 feet, built one 50-stamp mill, with room and building space enough for an additional 50 stamps; that it built the necessary houses for its large operations, cleaned out the ditches, repaired the flumes, excavated for and constructed pipe lines, and continuously used by means of them, in the progress of the work, such of its appropriated waters of Lurvey creek as were from time to time needed. Evidence was also given on behalf of the defendant to the effect that all of the 4,000 inches appropriated by its assignor, Gilbert, are needed by the company for power and other necessary uses in its said operations, and that in the aggregate it and its assignors have already expended in the establishment and development of the property about $500,000.

Whatever conflict there is in the evidence was resolved against the plaintiffs by the judge of the court below, whose findings are in cases like the present always to be taken as "presumptively correct, and unless an obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the findings should not be disturbed" North American Exploration Co. v. Adams, 104 Fed. 404, 45 C. C. A. 185; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 134, 12 Sup. Ct. 821, 36 L. Ed. 649. So far from finding any such mistake in the present case, we are of the opinion that the evidence clearly justified the findings made by the court below.

The judgment is affirmed.