ANDERSON v. CAMPBELL et al.

(Fourth Division. Fairbanks. April 29, 1913.)

No. 1797.

1. WATERS AND WATER COURSES (§ 154*)—PURPOSE OF USE—MINES AND MINERALS.

The locator of a placer mining claim and his grantees have the right to use the waters of a stream flowing through such claim in their mining operations on the claim, and such right is appurtenant to and will pass with a conveyance of the claim.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 167–173; Dec. Dig. § 154.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

2. WATERS AND WATER COURSES (§ 142*)—APPROPRIATION—RIGHT ACQUIRED.

When the waters of a stream have been diverted from its natural course, and carried through ditches, or by other means, and beneficially used in another place, the appropriator of such waters becomes the owner of property of a separate and specific kind.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 15, 152; Dec. Dig. § 142.*]

The plaintiff claims the right to use the waters of Baker's Pup, a tributary of Mastodon creek, in the Circle precinct, to the extent of 400 miner's inches, taking the water from a point about 50 feet below the upper boundary line of discovery placer claim on said stream, and carrying it by a ditch, about one mile in length, along the left limit of Mastodon creek to claim No. 19 above discovery on said Mastodon creek.

It appears from the allegations of the complaint, and from the undisputed evidence upon the trial, that the plaintiff's right was initiated by notice of location or appropriation of the waters of Baker's Pup to the extent of 400 miner's inches, posted July 24, 1911; that this was followed by making a survey and marking the line and grade of the proposed ditch, and that work was actually begun four days later on the construction of the ditch, first stripping off the moss and sod, and then excavating to the necessary depth, the ditch being completed and water diverted therein about a month later; that at that time there was only about 50 inches of water flowing in Baker's Pup, an amount not sufficient for mining operations, but which was allowed to flow through the ditch for the purpose of puddling the bottom, and that the following spring, about May 6, 1912, water was again turned in the ditch to its full capacity, and was used by means of a pipe conducting it from the lower end to 19 Mastodon creek, in hydraulic mining on this claim.

About August 9, 1911, the defendants began the construction of a ditch, having its intake about 900 feet above the intake of the plaintiff on Baker's Pup; the ditch running then up the left limit of Mastodon creek to a point about opposite

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

placer claim No. 30. This was completed during the summer of 1911, with the exception of about 140 feet across some rocky ground, where a flume was necessary, and this flume was put in place in the spring of the following year. About June 10, 1912, defendants diverted the water into the ditch so constructed, taking all the water from Baker's Pup, so that none thereafter flowed through the ditch of plaintiff.

This action is to enjoin defendants from diverting the waters of Baker's Pup above plaintiff's ditch, and to quiet plaintiff's title to the use of such waters, to the extent of 400 miner's inches, to be carried through the ditch constructed by him, as above described.

Defendants supported their claim of right to use the water from Baker's Pup, by a notice of location, dated July 15, 1911, posted at some place along the bank of the stream, above the intake of plaintiff's ditch, and below the intake of the ditch of defendants. The evidence as to the point where such notice was posted is conflicting, as well as the evidence of the date of the posting of the notice; the evidence of plaintiff tending to show that defendants' notice was not posted until August 3 or 4, 1911, and that the place of posting was 250 or 300 feet from plaintiff's intake, and at a place easily seen therefrom, and from other points along plaintiff's ditch line, while the evidence of defendants tended to show that the notice was posted on the day of its date, July 15, 1911, at a point further upstream, nearer defendants' intake, and at a place where it could not be seen by one standing at plaintiff's intake or at any place along his ditch. It also appears that, at some time prior to 1897, a short ditch was constructed from the lower part of Baker's Pup, several hundred feet below plaintiff's intake, running thence up the left limit of Mastodon creek to a point opposite the lower part of claim No. 29; that since that date water had been carried through this ditch, and used for a short time during the spring of three or four different years, to sluice small dumps taken during the preceding winters from claims 26, 27, and 28 on Mastodon. Defendants claim to be the owners of a one-fourth interest in claims Nos. 26 and 27 on Mastodon creek, and of all the claims Nos. 28 to 35, in-

clusive, on Mastodon creek, and claim the right to use the waters of Baker's Pup, and that this is a right appurtenant to claims 26 and 27, and that, by acquiring the ownership of an interest in these claims, they acquired the right to use water from Baker's Pup thereon, and that in constructing their ditch, taking the water at a point further up on Baker's Pup, and conveying it thence to a point further up on Mastodon creek, they are availing themselves of the same water right, and that they have the right to change the point of diversion and the place of use, so long as they do not interfere with the rights of others entitled to the use of such waters below the outlet of the old ditch at claim No. 29 on Mastodon creek. They claim that all the waters diverted by means of the new ditch are returned into Mastodon creek, and flow down the same, so that the volume of this creek at claim 29, and below, is practically the same as if the waters of Baker's Pup were used through the old ditch.

The position assumed by defendants before the close of the trial was practically an abandonment of the claim of any new right initiated by the notice of appropriation dated July 15th, and defendants' rights were based wholly upon the right acquired and held by reason of the old ditch.

McGowan & Clark, of Fairbanks, for plaintiff.

A. R. Heilig, of Fairbanks, for defendants.

FULLER, District Judge. The right to use the waters of such a stream as Baker's Pup for mining purposes is, of course, conceded, and forms the basis of the claims of both parties. This right is acquired by taking unappropriated waters and diverting them from a stream and conveying them to a place where they are applied to a beneficial use, such as hydraulic mining operations. The evidence shows that the plaintiff did make such diversion and application of the waters of Baker's Pup; that his right was initiated by a notice of appropriation, posted July 24, 1911; that the ditch was constructed with due and reasonable diligence; that such construction was begun prior to the beginning of any work on defendants' ditch; that the plaintiff's ditch was completed prior

to the completion of defendants' ditch; and that the waters carried through the ditch were applied to a beneficial use, in hydraulic mining, prior to any use made of such waters carried through the ditch of defendants. The plaintiff has performed all the acts necessary to appropriate the waters of Baker's Pup to the extent claimed by him, and is entitled to the relief demanded in his complaint, unless the defendants have shown a better right to the use of the waters in said stream.

As the defendants now base their rights solely upon the appropriation made by their predecessors entitled to claims Nos. 26, 27, and 28 on Mastodon creek, it is unnecessary to consider whether or not they acquired any rights by the different acts performed by them on and subsequent to July 15, 1911, in connection with the upper ditch constructed by them, with its intake on No. 1 or No. 2 above discovery on Baker's Pup.

It may be conceded, for all purposes connected with this action, that the defendants are the owners of one-fourth interest in claims Nos. 26 and 27 on Mastodon creek, and of all of the claims above these on this creek, to and including No. 35, and that they have succeeded to all the rights of their grantors in these claims, since the dates of their respective locations, although the evidence tended to show that, as to some of these claims, the title had not yet been vested by complete conveyances, and that other parties had at least equitable interests therein with one or the other of the defendants. Conceding, also, that the owner of a water right has the right to change the point at which he diverts the waters of a stream, and also to make use of such waters at different places, the only question that is necessary to be considered is whether or not any right has been shown to the use of the waters of Baker's Pup, by reason of the construction and use of the old ditch running from the lower part of discovery claim on Baker's Pup to a point just above No. 28 on Mastodon creek, and, if such right has been shown, whether or not the defendants have succeeded thereto. As has been stated above, the evidence showed that water had been carried through this old ditch, and used on

three or four occasions, in the spring of different years, in sluicing dumps excavated during the preceding winters from claims 26, 27, and 28 on Mastodon creek. It also appeared that, at each of the times such use was made of such waters, the old ditch was repaired to a slight extent by different lessees and in one instance by owners, of parts of said mining claims; that but little more than a sluicehead of water was carried through this ditch at any of these times, and that none of these lessees claimed any interest in said ditch, or any particular right to the waters they were using through it, and that immediately after sluicing their winter dumps they did nothing further in connection with this ditch, and made no claim thereto. It did not appear by whom the ditch was originally constructed, nor was the date of construction shown, further than that an old ditch, not in condition to be used without repairs, was in existence prior to 1897. The defendants also introduced in evidence, without objection from plaintiffs, a notice of water right recorded in the records of Mastodon creek mining district, which records are now in the office of the recorder of Circle recording district, as follows:

"(Page) 53.

"Mastodon Creek Records—Water Rights and Their Locations.

"Water right located on creek emptying from the west about claim No. 27. No. of inches, 150. Recorded May 27, 1895, in the name of T. Bodroga.     O. C. Bell, Recorder."

No evidence was given that any ditch was ever constructed by Bodroga, or that any use or appropriation of the waters of Baker's Pup were made by him, or that the defendants had succeeded to any rights claimed by him, nor do the defendants claim under any conveyance from any prior owner of any water right, but base their claims solely upon the ground that they have a right to the use of the waters of Baker's pup, as a right appurtenant·to claims Nos. 26, 27, and 28 on Mastodon creek, by reason of the facts above stated. While it may be conceded that the locator of a placer mining claim, and his grantees, have the right to use the waters of a stream flowing through such claim, in their mining operations on the claim (Madigan v. Kougarok Mining Co., 3 Alaska, 63), and that

such right is appurtenant to the mining claim, and would pass to a grantee by a conveyance of the mining claim itself, without special words particularly mentioning the water right, yet such a result does not follow when the water right claimed is a right to use the waters of a stream not flowing over the mining claim conveyed. Water rights are recognized in this jurisdiction as distinct species of property. Such rights are acquired by appropriation, according to the customs of the different mining districts and under the laws of the United States. Miocene Ditch Co. v. Campion Mining & Trading Co., 3 Alaska, 572; Thorndyke v. Alaska Perseverance Mining Co., 164 Fed. 657, 90 C. C. A. 473; Van Dyke v. Midnight Sun Mining & Ditch Co., 177 Fed. 85, 100 C. C. A. 503; Miocene Ditch Co. v. Jacobsen, 148 Fed. 680, 77 C. C. A. 106.

When the waters of a stream have been diverted from its natural course, and carried through a ditch, or by other means, and beneficially used in another place, the appropriator of such waters becomes the owner of property of a separate and specific kind. The water right thus appropriated is not necessarily appendant or appurtenant either to the mining claim upon which the water is used, or the mining claim through which the stream flows, whence the water was diverted, but the right to use the water so appropriated belongs to the owner of the ditch constructed for its conveyance, to the extent so appropriated. The evidence in this case does not show who the builders or owners of this old ditch were, nor the amount of water at any time appropriated by them, nor does it show any present right in the builders or owners of such ditch to use the waters of Baker's Pup. On the contrary, the evidence shows that such right, if any at any time existed, has been abandoned. As the defendants have failed to show any right in connection with this old ditch, or any right independent of it, they are without standing to resist plaintiff's demands.

Let findings of fact and conclusion of law and the decree be prepared in accordance with these views.